Morning, I'm Bob Stringer representing the appellants in this matter. There are two features of this case which I think really stand out like a sore thumb. I think particularly because Allstate essentially ignored them in their brief. There are not many facts in this case. We stipulated to the record the insured is deceased, has been deceased for a number of years. Well, you say you call him the insured. Isn't that the issue? Well, yes. Well, he was insured. Well, arguably it is. Not arguably. I mean, it is. The policy has it named insured. That's correct. It's Commercial Facility Service, DBA CFS Incorporated. Yes. And then the policy says when we use the word you, it means the insured. Yes. So your client... I'm sorry. So the issue is whether you qualify. That's correct. I was simply using it as a short phrase for saying the gentleman who applied for insurance on behalf of his company is deceased. So there's no testimony from him on what was said. The coverage case didn't come along until several years after the death. So it was really useless, couldn't get anything out of the insurance agent. So we have a stipulation on the record. But one thing that is stipulated to, it is a fact, it is undisputed, and all State has just chosen not even to discuss it in its brief, is that this gentleman was given a quotation and that the insurance was applied for based on that quotation. The quotation said that this insurance provides you with a form of bodily injury coverage if you are involved in an accident. And where's the quotation in the excerpts? The quotation is at tab 6, excerpt of record 10131. And... Wait a minute. Hold on. Okay. I'm at tab 6 of appellant's excerpts of record. Where do I look in tab 6? All right. And tab 6 is on the side, and then the quotation is in exhibit A. Okay. And then in the lower right-hand corner are the excerpts of record numbers, starting with ER 0125. Yeah. Okay. And what number do I look for? And 131. 131 I look for. Okay. So you, you're arguing that you, he has to interpret that as meaning you personally. I don't know how else he understands that. Has he been given a copy of the policy at that time as well? No, he has not. He has given, the stipulation is he was given the quotation first. Based on that and his decision to go forward, he was given the application materials, which appear in exhibit B, right behind that. Exhibit B actually has a couple options. One of the options is not for this other kind of insurance that all State claims he could have gotten. And then after the application is put in, exhibit C results. Exhibit C, the policy itself, is the one that has the definition of you, which I make other arguments regarding that it's not conspicuous in that it makes the coverage illusory. And do we know at what date he first sees the policy? We have the date of issuance of the policy, which is on the first page of it, which is March 17, 2002. I'm looking, oh, I see. Policy period covers, is that also the date of issuance? That's not to say that's not, no, I guess my question is when did he first see the policy itself? Policy coverage is not necessarily the date on which he first sees the policy. The policy would have been issued sometime after the application, which would have been in 2001. Yeah. And what was the date of death? The date of death was October 5, 2002. The policy had actually been renewed once. Yeah. So at the time he renews it, he had an opportunity to read the policy. Yes, if that's what an insured does. And, of course, that's what my complaint is about, the conspicuousness of the definition. If one wanted to sort his way through this policy. But my first argument on the coverage really doesn't have anything to do with what it says in this policy, except to the extent that this policy is in a way designed to clearly and conspicuously make him aware that something that the location would have led him to believe was not true. These are independent theories, but they do overlap to a certain extent. The starting point, I think, of everything is he personally, it's his company, he's the sole owner, he's the man who runs the company, goes in and gets a quotation. And he's given pieces of paper which represent the kind of coverage that is going to be issued. And it says on the page that I indicated, I believe I said 161 or rather maybe it's 120, that this provides uninsured motorist coverage to you if you are involved in an accident. Yeah, although, you know, I'm looking, I'm on exhibit A of 5-6 where we've got these various sort of little things, including age 131. I'm looking at the cover letter, which is ERO 125. The cover letter is not addressed to him. The cover letter is addressed to the company. That's correct. And therefore, when you is involved, it sounds as though maybe they're talking about the addressee of the letter. Yes. That is to say the company, not him personally. I will agree if all of my theories, if this was something where a lawyer was asked to sit down and to review these documents, a lawyer would raise a serious question as to whether or not this man was personally going to be covered for a bodily injury type of coverage. The law is very well established that that is not the way that documents like this are interpreted, and this is not even an interpretation question. It's what does a layperson who comes into an office and applies for insurance is handed a document, and the document says this pays you or your passenger up to the limits of liability for injuries including death. Now, his company cannot die. His company cannot be personally injured. It's saying you, and I suppose if he's a lawyer, he might start wondering about that. But how is he supposed to think that this is a coverage they're offering to my company if my company dies or my company has a personal injury? There's just no way that a layperson is going to leap to that conclusion. And there is no definition of you in this paper. Now, I assume that if he had suffered some serious injury and had died while driving a company vehicle, he would have been covered, correct? Yes. But that's not what it's saying here. Well, boy, it's a stretch to me to say that he's – oh, I'm sorry. Go ahead, Chief. Oh, I just – he was applying for a commercial automobile policy? Isn't that what this is? Yes. And these kinds of policies are sold with endorsements that provide coverage to the individual owner. And this didn't have one of those. In this particular – And this didn't have it. Yes. And the application – And there's no indication that he went in and indicated that he wanted personal coverage to ride his motorcycle. There is no indication that he asked for anything in particular except a quotation. That is what our stipulation is. He asked for a quotation. He is then given a quotation which says, this covers you for bodily injury. He is given a quotation or the company is given a quotation? The company. Well, he's – this is what my point is. He's essentially the company. He's the man who runs the company. Well, as Judge Fletcher – And makes all the decisions. You know, I went back and I just re-read again Judge White's decision in this case. And I didn't see any discussion at all of the quotation argument that you're making now. Was there any reason why he didn't discuss it in his opinion? He says you've stipulated that the policy itself is not ambiguous. Yes, I did. And that is not an argument that I'm making here either. So did you make this quotation argument to Judge White? Yes, I did. I made all three of these arguments. He dismissed the reasonable expectation argument in one sentence. And that was – Where's the sentence? I don't have it in front of me, but I do cite it in my brief where he said that the reasonable expectations doctrine applies only in the case of the interpretation of ambiguous contracts. Lines 15 and 16, ER 272. Yes. And with all respect to Judge White as a very fine judge, that is dead wrong, as I have gone to pains to establish in my brief. There are cases in California going back to the 50s. The 1975 Supreme Court case in California, Smith v. Westland, says that even in the case of an ambiguous policy, if there is a provision that is surprising to the insured, that he would not expect for it to be there. And in this case, the insured is the company, but the company, what comes into that company, is coming through the brain of the man who owns it and runs it. And so it's a question of whether it would be surprising to him acting on behalf of his company. Smith says that if something in there is surprising, even if it is clear and ambiguous, it has to be pointed out. If it is not pointed out – What is the surprising? What is the word that is surprising? When a quotation says, you are covered for injuries. And the quotation is addressed to whom? Well, it's addressed to the gentleman who is there sitting there on behalf of his company. The question is, how does the layperson read it? But what did he apply for? Did he apply for a personal policy of some kind, or did he apply for a business policy? Well, he applied for a business policy, but – And he never asked for this writer that would give personal coverage.  And there is no evidence he was told about the writer. But it's more than that. When somebody comes in to apply for insurance, they do not know everything that that policy is going to provide. They're given a quotation which tells them that it's going to include this, A, B, C, and D. Do you think it would be reasonable – excuse me. If the deceased assistant had been driving a company car and had been in an accident, would the argument be no, only the company owner is covered by this policy? No. Because it says you? No. There's a separate provision in there. This particular quotation is not addressed to that situation. What this says, what the quotation says, is if you have an accident, you are covered. If the insurance policy then said that you have coverage which is consistent with the way that that was worded, which is that there is this entity, you, who can have a bodily injury and who can be injured or who can be killed, then the policy would have to say what they claim that that writer would have said, a writer that I have never seen and which was never produced in the litigation. Your point is very clear. Let's hear it from the other side, and we'll give you a full opportunity to respond. All right. Thank you. Good morning. Paul O'Rourke on behalf of Appelli Allstate Indentity Company. The quotation was addressed to CFS Corporation. The policy was purchased by CFS Corporation. The contract is in the name of CFS Corporation. That's the bottom line here. I think what I understand? There's the coverage provided by Allstate was only for persons occupying a covered auto under the policy. That's the type of UM, UIM coverage mandated by 11-580.2 of the insurance code. That's California's uninsured motorist statute. It doesn't draw a distinction between a closely held corporation and a corporation. Counsel, the argument throughout has been it's unambiguous and true under a rigorous literal reading of the policy. There's no coverage. Well, how else do you read a policy but literally according to the plain and unambiguous terms? This is an unambiguous policy. The other side has stipulated to that. The problem is if you start trying to rewrite the policy, and, again, U is the corporation. That's who purchased the policy. That's who applied for the policy. The quotation is directed to CFS, Inc. How does a quotation work? Tell me how this process works. In short, typically, I mean, I'm not a sales agent, but in short, ask for a quote from an agent. And, by the way, let me say one other thing. Mr. Marino also carried a personal lines motorcycle policy with Allstate, and Allstate paid the underinsured motorist limits under that policy because, again, he was an individual insured under a personal lines policy, so he was covered when he was riding a bicycle. But this is different. It's a corporate policy. It's a commercial policy. Presumably, you sit down with the agent. The agent gives you the quote, and then you say, I want a policy. Then there's an application. Submit it. So a business person like this comes in, and what does typically a business person ask for? A business person typically asks for coverage for his corporation. I mean, he can get coverage. And then how is the quotation or how is the quotation determined? The quotation is determined by who is asking for the insurance, who owns the automobiles. I presume CFS would have owned the automobiles in this case. They'd have the insurable interest on the automobiles. And so he, on behalf of his corporation, asks for commercial auto insurance for his corporation. And a quotation says what? This is what it's going to cost you? This is – I didn't see where a cost was in there. I'm sorry, but I – So what is a quotation? A quotation is a basic – it appears to be a basic description of what the insurance is going to be like. And then eventually, if it's accepted, then there's a policy issue, which was the case  policy here, then those terms constitute the contract. And I think it's very clear here what's going on is they're trying to basically change a commercial policy into a personal lines policy, and that's simply not the case. The problem here, if you try to rewrite the policy and say, well, no, you should be Mr. Marino, where do you draw the line on that? I mean, clearly he'd been covered if he'd been in a covered auto. There's no doubt about that. But he wasn't in a covered auto. He was on a bicycle. When you have to get uninsured or underinsured motors for that, you need a personal lines policy, which he did carry with Allstate. Did he take those out at the same time, or do you know? I'm not sure. I don't know, Your Honor. But he had the personal lines policy. Correct. And that was his. And the business line. Correct. In the name of his business. And you kind of can't have it both ways. If you're an incorporate, you're a corporation, and that's just the way it goes. That's how you do business. But, you know, the point here is where do you draw the line with this? If you say, well, Mr. Marino is now a U, would that also include his wife? Would that also include the employees, part-time employees, full-time employees? Where do you draw the line? I think you draw the line at how the policy is written. And the policy is very plain, explicit, and clear here. I think the definition of U is quite conspicuous. It's on the first page of the policy, after the declarations pages, obviously. It's on the first page, third sentence. It says, you are your. Throughout this policy, it says specifically, and it could be more clear, throughout this policy, that includes the whole policy, the words you and your refer to the named insured shown on the declarations. CFS. When I come in looking for insurance, do I make some kind of an application? Do I fill out a document or some kind of an application? That's the way it used to always been. I don't know if it's exactly done that way all the times. Now, a lot of times, things are electronic. So I don't know at the time how much of this is the old days used to have a written application. You had to sign out things, sign it, complete it. I'm not sure if it's exactly done that way in all respects. In the application, would it identify the insurance? It would. It would identify the insured asking for insurance, and here it would be CFS. CFS. It'd be CFS. That's who applied for the policy. In fact, there was never an objection after the insured got the policy. Why is this in CFS? Because that's who applied for the policy. That was the company whose liability was being insured. I'm reading through the quotation that specifies three particular vehicles, a 2001 Ford truck, a 2000 Volvo, and a 1899 Subaru. And it quotes with respect to each of those vehicles what the price is going to be. And as it goes through, it will say, liability coverage covers all sums you are obligated to pay bodily use of your auto. You's clearly referring to the automobiles that are already in the quotation. The only owner of the automobile is the company. I mean, it seems to me terribly implausible if you read the quotation document as a whole, that you would be all of a sudden the individual operating some other vehicle, that is, a bicycle, not these three named automobiles, in some purpose, for some purpose totally unrelated to the business. It just doesn't make any sense. I don't see, Your Honor. First off, I don't believe the reasonable expectations applies here under the Bank of the West. You've seen the argument in our briefs. But I don't see how an insured can reasonably expect a corporate insured that you would be anybody but the corporation that applied for the insurance and bought the insurance policy and in whose name that insurance policy is. In fact, 11580.2b says named insured, it shall be referred to the individual or the corporation shown on the declarations page. That's completely what the case is here. It's the corporation shown on the declarations page. In fact, it's not only logical and conspicuous. The part at the very beginning where you is defined, it also defines we, our, and us as Allstate. If you're a reasonable person, you'd look at the beginning of a contract to see how the parties are defined. That seems to make sense to me. And it says, as used throughout, you or your shall refer to the policyholder named on the declarations. You see what happens when you try to write legal documents in friendly language? I mean, we went through law school being screamed at, don't use legalese, use friendly language. So now we use you, we, and you're in whammo. You're into what in the world that means. I actually think under the reasonable expectations, this perfectly fits the reasonable expectations, even if that's relevant here given unambiguous policy language. The other thing I just want to point out, the case is relied upon by where you have to point out the specific language. Most of those cases, Coey, Young, Smith, they're all conditional receipt cases. Totally different. That's in the life and health insurance context where you're an insured, you want a life policy or a health policy. The agent basically says, hey, give me a premium up front. You sign the application. Here's the premium. Here's a receipt. And that provides a temporary kind of conditional coverage. And the courts have said, hey, look, if you take somebody's money, they're going to think they have immediate coverage for life or health insurance. You simply need to point out to them the nature of this conditional receipt, that it's temporary and possibly terminable. You're going to have to qualify as a risk. That's a wholly different circumstance than we're talking about here. Your position is very clear, both here today and in the briefs. Do you have anything else you want to add? I do not. All right. Thank you. There it is. The cars belong to the company. The application was by the company. And what reasonable expectation? Well, I will do something that lawyers love to do, present a hypothetical question. Let us suppose that everything is exactly the same as we have here. But the piece of paper that this man is handed when he applies for the insurance, in the quotation, instead of saying you are covered for personal injury and death, it says you personally. How is a layperson going to understand that? Under the reasonable expectations doctrine, even if the subsequent insurance policy is unambiguous, if a situation has been created by the insurer that misleads the insured into not expecting that limitation, then that is binding on the insurance company, even though you can characterize it for advocacy purposes as rewriting the policy. And that doctrine is not limited to conditional receipts. In the Coey case, which is a Ninth Circuit case, that was a conditional receipt case, but it took the trouble to disapprove a court of appeal case of the State of California, which it said was wrongly decided, the Clendenning case, which was not a conditional receipt case. It was a liability case. I cited a California court of appeal case, the Purdy case. What's the key case you want us to read before we make a final decision? I believe the key cases are Coe and Purdy on the applicability of the reasonable expectations doctrine. Coe, because it says that it disagrees with the California case Clendenning, which rejected the reasonable expectations doctrine for a liability policy, and the Purdy case, P-U-R-D-I-E, which specifically holds that the doctrine is applicable to liability policies. I believe that is the case. In fact, all States did not even trouble to present any cases in opposition to that. They just gave them the back of the hand and said, these are old cases and, therefore, there's no reason to pay attention to them. The 1994, I forget exactly how it's pronounced, it's an ERISA case, not a State case, but it was reached, its result, because it was persuaded by the wisdom of California law, was not a conditional receipt case. It was a case involving a group life insurance policy, where the Ninth Circuit held that a clear and explicit provision would not be enforced because it was not the sort of thing that would fall within the reasonable expectations of the insured. What's the full site of the Coe case? The Coe case. State Farm v. K-O-H-E? Yes. That's the defendant's name. And Purdy? And. I was looking for it in your list of cases. Purdy is another one where it's always mentioned by the name of the defendant. Underwriters v. Purdy. It's cited in my brief at page 32. It's 145 Calop III. So it's Underwriters v. Purdy. Got it. Okay. In other cases saying the reasonable expectation doctrine applies regardless of how clear that policy is. So what my argument here is, if he was handed something construing the application in favor of the insured, not in favor of the insurance company, if that can be construed to be a promise of coverage for him personally, that is the way it has to be read regardless of what the policy says. You want this to be read, the you, to be read as if it said you personally. Even though he wasn't buying a personal insurance policy, he was buying a business policy. That's correct. Exactly what happened in the Coletakis case. And even though he had a personal insurance policy. Even though he had a personal insurance policy. Why did he need that if he had this? Well, for one thing, if he's on his motorcycle and he causes an accident, he needs to be insured for the injuries that he's caused. So there are clear reasons for having the two different policies. So he understands the difference. He understands that he needs one for liability. These policies are purchased principally for liability. But when we get down to an issue like this, the question is, given the information that the insurance company gave him, how was he supposed to understand what they said? And we'll answer that for you. All right. I would like to point out one final point on this reasonable expectations doctrine, and that is because I think of what was the incorrect ruling below, that it's a doctrine that only applies to the interpretation of ambiguous language. And Allstate has argued that as well. In my reply brief, I cited two California cases that say that that is not the case. The Graham v. Scissor's Tale case of the California Supreme Court in 1981 said that that doctrine applies to all contracts of adhesion. It applied it there in the case of an arbitration agreement. And the thing that I think is fascinating about that is that the law both in state court and in federal court is that arbitration agreements are construed in favor of arbitration, not the other way. So there's even a heavier burden in trying to avoid the precise language of a contract like that if it's oppressive for whatever reason. Nevertheless, in Graham v. Scissor's Tale, the California Supreme Court held that despite the clear and explicit language of an arbitration agreement, it would not be enforced because it did not meet the reasonable expectations of the party. And that is the very same doctrine that I am relying on here. Thank you. Thank you both for a case very well presented. If I may, Your Honor, unless my time is out. Your time is out. Thank you, Your Honor. The case just argued is order submitted.
judges: Schroeder, Trott, W. Fletcher